**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**Asa Richard TALBOT,**
**Defendant-Appellee.**

**No. 86–5541.**

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 9, 1986.

Decided July 31, 1987.

Lionel R. Barrett, Jr. (argued), Nashville, Tenn., Richard McGee, for defendant-appellee.

Joe B. Brown, U.S. Atty., Nashville, Tenn., William T. Warren, III, Patty Merkamp Stemler (argued), Washington, D.C., for plaintiff-appellant.

Before ENGEL, KRUPANSKY and NELSON, Circuit Judges.

KRUPANSKY, Circuit Judge.

The plaintiff, the United States Government (the Government), appealed the district court's dismissal of an indictment against the defendant Asa Richard Talbot (the defendant or Talbot), which had charged him with assault with intent to commit a felony on a military reservation in violation of 18 U.S.C. § 113.

The record disclosed the following facts. During the year 1985, the defendant Talbot, a medical doctor with a specialty in otolaryngology with the rank of colonel in the U.S. Army Medical Corps, was assigned to the Blanchfield Army Community Hospital, which military installation is geographically situated within the State of Tennessee. The defendant was accused of sexually molesting an eleven-year-old female patient while treating her for an ear infection on or about May 28 and 31, 1985. The girl and her mother reported the incidents to the Army Criminal Investigation Division (CID) at Fort Campbell, the situs of the hospital. On June 29, 1985, as a result of the complaint, Colonel Robert Kreutzmann (Col. Kreutzmann), the defendant's commanding officer, in an oral order: (1) relieved Talbot from his duties as a medical officer; (2) designated his living quarters as his duty station; and (3) directed Talbot

to avoid all contact or association with the alleged victims or any witnesses. Subsequently, a sixteen-year-old female patient of the defendant also alleged that the defendant had sexually molested her on or about June 25 and 26, 1985 while treating her subsequent to a tonsillectomy.

On August 12, 1985, charges arising from the foregoing incidents, together with four additional alleged instances of sexual harassment of adult female military officers on the hospital staff, were preferred against the defendant by Col. Kreutzmann. An impartial officer was appointed to formally investigate the accusations pursuant to Article 32 of the Uniform Code of Military Justice (UCMJ) and to recommend disposition of the charges. The charges were subsequently dismissed without prejudice and the defendant was nominally transferred to another command at Fort Campbell on September 27, 1985 because of an appearance of command influence arising from a publicly expressed opinion attributed to Col. Kreutzmann that all instances of · physician misconduct be referred to court-martial without evaluation of the underlying merit or circumstances of the accusations.

On October 8, 1985, new charges were preferred against Talbot predicated upon the incidents that had allegedly supported the previous military indictment and a second Article 32 pretrial investigation was conducted. On October 29, 1985, Major General Burton D. Patrick (Gen. Patrick), the commanding general of Fort Campbell, acting upon the disclosures of the second investigation, ordered a general court-martial be convened to consider the outstanding complaints against Talbot. The defendant requested and was granted a two-month continuance on November 8, 1985 and his trial was scheduled to commence on January 18, 1986.

On Friday, January 10, 1986, four days after the continuance had expired, defendant's counsel filed a motion to dismiss the pending charges, asserting a denial of the defendant's right to a speedy trial in derogation of Rules for Courts-Martial (R.C.M.) 707, which mandated the commencement of trial within 120 days "after notice to the accused of preferral of charges under R.C.M. 308 or the imposition of restraint under R.C.M. 304, whichever is earlier." R.C.M. 707(a).[1] Defense counsel

1. R.C.M. 707 provided in its entirety as follows:
Rule 707. Speedy trial
(a) *In general.* The accused shall be brought to trial within 120 days after notice to the accused of preferral of charges under R.C.M. 308 or the imposition of restraint under R.C.M. 304, whichever is earlier.
(b) *Accountability.*
(1) *In general.* The date on which the accused is notified of the preferral of charges or the date on which pretrial restraint is imposed shall not count for purpose of computing the time under subsection (a) of this rule. The date on which the accused is brought to trial shall count.
(2) *Inception.* If charges are dismissed, if a mistrial is granted, or—when no charges are pending—if the accused is released from pretrial restraint for a significant period, the time under this rule shall run only from the date on which charges or restraint are reinstituted.
(3) *Termination.* An accused is brought to trial within the meaning of this rule when:
(A) A plea of guilty is entered to an offense; or
(B) Presentation to the factfinder of evidence on the merits begins.
(4) *Multiple charges.* When charges are preferred at different times, the inception for each shall be determined from the date on

which the accused was notified of preferral or on which restraint was imposed on the basis of that offense.
(c) *Exclusions.* The following periods shall be excluded when determining whether the period in subsection (a) of this rule has run—
(1) Any periods of delay resulting from other proceedings in the case, including:
(A) Any examination into the mental capacity or responsibility of the accused;
(B) Any hearing on the capacity of the accused to stand trial and any time during which the accused lacks capacity to stand trial;
(C) Any session on pretrial motions;
(D) Any appeal filed under R.C.M. 908 unless it is determined that the appeal was filed solely for the purpose of delay with the knowledge that it was a totally frivolous and without merit; and
(E) Any petition for extraordinary relief by either party.
(2) Any period of delay resulting from unavailability of a military judge when the unavailability results from extraordinary circumstances.
(3) Any period of delay resulting from a delay in a proceeding or a continuance in the court-martial granted at the request or with the consent of the defense.

(4) Any period of delay resulting from a failure of the defense to provide notice, make a request, or submit any matter in a timely manner as otherwise required by this Manual.

(5) Any period of delay resulting from a delay in the Article 32 hearing or a continuance in the court-martial at the request of the prosecution if:

(A) The delay or continuance is granted because of unavailability of substantial evidence relevant and necessary to the prosecution's case when the Government has exercised due diligence to obtain such evidence and there exists at the time of the delay grounds to believe that such evidence would be available within a reasonable time; or

(B) The continuance is granted to allow the trial counsel additional time to prepare the prosecution's case and additional time is justified because of the exceptional circumstances of the case.

(6) Any period of delay resulting from the absence or unavailability of the accused.

(7) Any reasonable period of delay when the accused is joined for trial with a coaccused as to whom the time for trial has not yet run and there is good cause for not granting a severance.

(8) Any other period of delay for good cause, including unusual operational requirements and military exigencies.

(d) *Arrest or confinement.* When the accused is in pretrial arrest or confinement under R.C.M. 304 or 305, immediate steps shall be taken to bring the accused to trial. No accused shall be held in pretrial arrest or confinement in excess of 90 days for the same or related charges. Except for any periods under subsection (c)(7) of this rule, the periods described in subsection (c) of this rule shall be excluded for the purpose of computing when 90 days has run. The military judge may, upon a showing of extraordinary circumstances, extend the period by 10 days.

(e) *Remedy.* Failure to comply with this rule shall result in dismissal of the affected charges upon timely motion by the accused. R.C.M. 707. *See* Executive Order 12473 (Apr. 13, 1984), 49 Fed.Reg. 17152 (Apr. 23, 1984), as amended by Executive Order 12484 (July 13, 1984), 49 Fed.Reg. 28825 (July 17, 1984). *Compare* 18 U.S.C. § 3161 *et seq.* (Speedy Trial Act).

R.C.M. 707(a), as indicated, required the court-martial to commence within 120 days after notice to the accused of preferral of charges under R.C.M. 308 or the imposition of restraint under R.C.M. 304. R.C.M. 304 in turn provided as follows:

Rule 304. Pretrial restraint

(a) *Types of pretrial restraint.* Pretrial restraint is moral or physical restraint on a person's liberty which is imposed before and during disposition of offenses. Pretrial restraint may consist of conditions on liberty, restriction in lieu of arrest, arrest, or confinement.

(1) *Conditions on liberty.* Conditions on liberty are imposed by orders directing a person to do or refrain from doing specified acts. Such conditions may be imposed in conjunction with other forms of restraint or separately.

(2) *Restriction in lieu of arrest.* Restriction in lieu of arrest is the restraint of a person by oral or written orders directing the person to remain within specified limits; a restricted person shall, unless otherwise directed, perform full military duties while restricted.

(3) *Arrest.* Arrest is the restraint of a person by oral or written order not imposed as punishment, directing the person to remain within specified limits; a person in the status of arrest may not be required to perform full military duties such as commanding or supervising personnel, serving as guard, or bearing arms. The status of arrest automatically ends when the person is placed, by the authority who ordered the arrest or a superior authority, on duty inconsistent with the status of arrest, but this shall not prevent requiring the person arrested to do ordinary cleaning or policing, or to take part in routine training and duties.

(4) *Confinement.* Pretrial confinement is physical restraint, imposed by order of competent authority, depriving a person of freedom pending disposition of offenses. *See* R.C.M. 305.

(b) *Who may order pretrial restraint.*

(1) *Of civilians and officers.* Only a commanding officer to whose authority the civilian or officer is subject may order pretrial restraint of that civilian or officer.

(2) *Of enlisted persons.* Any commissioned officer may order pretrial restraint of any enlisted person.

(3) *Delegation of authority.* The authority to order pretrial restraint of civilians and commissioned and warrant officers may not be delegated. A commanding officer may delegate to warrant, petty, and noncommissioned officers authority to order pretrial restraint of enlisted persons of the commanding officer's command or subject to the authority of that commanding officer.

(4) *Authority to withhold.* A superior competent authority may withhold from a subordinate the authority to order pretrial restraint.

(c) *When a person may be restrained.* No person may be ordered into restraint before trial except for probable cause. Probable cause to order pretrial restraint exists when there is a reasonable belief that:

(1) An offense triable by court-martial has been committed;

(2) The person to be restrained committed it; and

(3) The restraint ordered is required by the circumstances.

(d) *Procedures for ordering pretrial restraint.* Pretrial restraint other than confinement is imposed by notifying the person orally or in writing of the restraint, including its terms or

argued that the conditions imposed upon the defendant's liberty by Col. Kreutzmann on June 29, 1985 had triggered the 120–day limitation period, which expired on October 27, 1985, twelve days before defense counsel requested the two-month continuance. On Saturday, January 11, 1986, the day after the defendant's motion to dismiss was filed, the military prosecutors advised defense counsel of their election to withdraw all military charges against Talbot and to refer the matter to the United States Attorney for the Middle District of Tennessee for evaluation and further action. On or about Monday, January 13, 1986, subsequent to a review and discussion of the case with the military prosecuting authorities, the United States Attorney assumed

jurisdiction of the inquiry. On January 14, 1986, Gen. Patrick ordered all outstanding charges pending against the defendant to be dismissed without prejudice to the government or the accused, noting that the United States Attorney had assumed jurisdiction of the case. Gen. Patrick's action was confirmed in a written order and memorandum on January 24, 1986.

A federal grand jury returned an indictment against the defendant on February 19, 1986. The true bill charged violations of 18 U.S.C. § 113 in three counts: counts one and two alleged that the defendant had committed assault with intent to commit the felony of aggravated sexual battery on the eleven-year-old female patient; and

---

limits. The order to an enlisted person shall be delivered personally by the authority who issues it or through other persons subject to the code. The order to an officer or a civilian shall be delivered personally by the authority who issues it or by another commissioned officer. Pretrial confinement is imposed pursuant to orders by a competent authority by the delivery of a person to a place of confinement.

(e) *Notice of basis for restraint.* When a person is placed under restraint, the person shall be informed of the nature of the offense which is the basis for such restraint.

(f) *Punishment prohibited.* Pretrial restraint is not punishment and shall not be used as such. No person who is restrained pending trial may be subjected to punishment or penalty for the offense which is the basis for that restraint. Prisoners being held for trial shall not be required to undergo punitive duty hours or training, perform punitive labor, or wear special uniforms prescribed only for post-trial prisoners. This rule does not prohibit minor punishment during pretrial confinement for infractions of the rules of the place of confinement. Prisoners shall be afforded facilities and treatment under regulations of the Secretary concerned.

(g) *Release.* Except as otherwise provided in R.C.M. 305, a person may be released from pretrial restraint by a person authorized to impose it. Pretrial restraint shall terminate when a sentence is adjudged, the accused is acquitted of all charges, or all charges are dismissed.

(h) *Administrative restraint.* Nothing in this rule prohibits limitations on a servicemember imposed for operational or other military purposes independent of military justice, including administrative hold or medical reasons. R.C.M. 304. *See also* R.C.M. 305 (pretrial confinement).

An amendment to the Manual for Courts-Martial effected subsequent to the instant facts modified R.C.M. 707(a) to read as follows:

(a) *In general.* The accused shall be brought to trial within 120 days after the earlier of:

(1) Notice to the accused of preferral of charges under R.C.M. 308; or

(2) The imposition of restraint under R.C.M. 304(a)(2)–(4).

Executive Order 12550 (Feb. 19, 1986), 51 Fed. Reg. 6497 (Feb. 25, 1986). The foregoing amendment eliminated the imposition of conditions on liberty (under R.C.M. 304(a)(1)) as a triggering mechanism for R.C.M. 707 speedy trial purposes, although the imposition of restriction in lieu of arrest, arrest, or confinement (R.C.M. 304(a)(2)–(4)) continued to implicate military speedy trial protections. By its own terms, however, that amendment did not apply to any conditions on liberty imposed before March 1, 1986 and directed that the effect of such a condition on liberty was to be considered under R.C.M. 707(a) as it existed before that date. R.C.M. 707 has also been recently amended to provide that the speedy trial period in subsection (a) also commences with a servicemember's entry on active duty under R.C.M. 304 concerning the exercise of court-martial jurisdiction over reserve component personnel. *See* Executive Order 12586 (Mar. 3, 1987), 52 Fed. Reg. 7103 (Mar. 9, 1987).

With respect to discussions addressing the scope of speedy trial protections in the context of the military, *see, e.g.,* R.C.M. 707 commentary analysis; D. Schlueter, Military Criminal Justice: Practice and Procedure §§ 5–3, 13–3(C) (2d ed. 1987); H. Moyer, Jr., Justice and the Military §§ 2–345–70, 2–470–82 (1972); M. Kadish, G. Roberts & R. Brofman, 3 Criminal Defense Techniques, *Defense of Servicemen* (Ch. 61) §§ 61.04, .11[3][c][vi] (M. Eisenstein, S. Allen & D. Winston eds. 1986); 3 Fed.Proc.L.Ed., *Armed Forces* § 5:112 (1981 & Supp.1986).

count three charged assault with intent to commit the felony of sexual battery on the sixteen-year-old patient.[2] The defendant appeared in court to answer the indictment on February 21, 1986. On April 1, 1986, the defendant moved for a dismissal asserting that his double jeopardy, speedy trial, and due process rights had been violated by the initiation of federal charges in the United States District Court for the Middle District of Tennessee. The district court conducted an evidentiary hearing on the motion on April 8 and 10, 1986, at the conclusion of which it issued oral findings of fact and conclusions of law and dismissed the indictment.

In dismissing the indictment, the district court concluded that the 120–day speedy trial limitation mandated by R.C.M. 707 had commenced to accrue on June 29, 1985 when Col. Kreutzmann's initial order restrained the defendant's liberty and that the military authorities had intentionally acted in bad faith by deferring jurisdiction over the matter to the United States Attorney's office to circumvent the military court's consideration and disposition of the defendant's motion to dismiss based upon asserted speedy trial infringements. Although the district court acknowledged that the United States Attorney's prosecution of the proceedings in federal court had been timely and had comported with the provisions of the federal Speedy Trial Act in all respects, the court considered the criminal action initiated by the federal grand jury to have been tainted by the actions of the military authorities and offensive to public policy so as to warrant dismissal of the indictment. On appeal, the defendant adopted the legal reasoning and public policy justifications articulated by the district court and invoked the constitutional protections of due process, speedy trial, and double jeopardy to support the dismissal. The Government, on the other hand, argued before this court that dismissal of the indictment by the district court

was unwarranted inasmuch as the prosecution initiated by the United States Attorney did not constitute an infringement of any of the defendant's rights, constitutional or otherwise, despite the prior proceedings pursued by the military authorities.

Resolution of the instant appeal necessitates an initial examination of the relationship between military and civilian prosecuting authorities. Case law has long recognized in a variety of contexts that the military by necessity constitutes a specialized environment separate from civilian society. *See, e.g., United States v. Stanley,* ––– U.S. –––, ––– – –––, 107 S.Ct. 3054, 3059–65, 97 L.Ed.2d 550 (1987); *United States v. Johnson,* ––– U.S. –––, 107 S.Ct. 2063, 2069, 95 L.Ed.2d 648 (1987); *Goldman v. Weinberger,* 475 U.S. 503, 106 S.Ct. 1310, 1312–13, 89 L.Ed.2d 478 (1986); *Parker v. Levy,* 417 U.S. 733, 743, 94 S.Ct. 2547, 2555–56, 41 L.Ed.2d 439 (1974); *United States v. Mariea,* 795 F.2d 1094, 1100 (1st Cir.1986); *Satterfield v. United States,* 788 F.2d 395, 398 (6th Cir.1986). This independence extends to the military justice system, which embodies a unique jurisprudence separate and apart from the law which governs in the federal judicial establishment, with different procedures, protections, and personnel, and which is designed to accomplish goals diverse from those served by the civilian criminal justice system. *See, e.g., Solorio v. United States,* ––– U.S. –––, –––, 107 S.Ct. 2924, 2930, 97 L.Ed.2d 364 (1987); *Chappell v. Wallace,* 462 U.S. 296, 300–05, 103 S.Ct. 2362, 2365–68, 76 L.Ed.2d 586 (1983); *Schlesinger v. Councilman,* 420 U.S. 738, 746, 757, 95 S.Ct. 1300, 1307, 1313, 43 L.Ed.2d 591 (1975); *Parker v. Levy,* 417 U.S. 733, 744, 94 S.Ct. 2547, 2556, 41 L.Ed.2d 439 (1974); *Gosa v. Mayden,* 413 U.S. 665, 672–75, 93 S.Ct. 2926, 2932–34, 37 L.Ed.2d 873 (1973); *Relford v. Commandant, U.S. Disciplinary Barracks,* 401 U.S. 355, 365–69, 91 S.Ct. 649, 655–57, 28 L.Ed.2d 102 (1971);

---

**2.** 18 U.S.C. § 113 provides: "Whoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault shall be punished as follows: ... (b) Assault with intent to commit any felony, except murder or rape, by fine of not more than $3,000 or imprisonment for not more than ten years, or both." The indictment specified that the described actions were felonies as defined by Tennessee law and occurred on property acquired for use and under the exclusive jurisdiction of the United States government.

*O'Callahan v. Parker*, 395 U.S. 258, 262–65, 89 S.Ct. 1683, 1685–87, 23 L.Ed.2d 291 (1969); *Reid v. Covert*, 354 U.S. 1, 36, 77 S.Ct. 1222, 1240, 1 L.Ed.2d 1148 (1957); *United States ex rel. Toth v. Quarles*, 350 U.S. 11, 17–18, 76 S.Ct. 1, 5–6, 100 L.Ed. 8 (1955); *Burns v. Wilson*, 346 U.S. 137, 140, 73 S.Ct. 1045, 1047, 97 L.Ed. 1508 (1953); *United States v. Mariea*, 795 F.2d 1094, 1100–01 (1st Cir.1986); *Baker v. Schlesinger*, 523 F.2d 1031, 1035 (6th Cir.1975), *cert. denied*, 424 U.S. 972, 96 S.Ct. 1473, 47 L.Ed.2d 741 (1976); *Seepe v. Department of the Navy*, 518 F.2d 760 (6th Cir.1975).

◼ As a consequence of the foregoing, it is well established that, under proper circumstances, as here, military and civilian courts enjoy concurrent jurisdiction to prosecute armed forces personnel for criminal wrongdoing, inasmuch as the military justice system was designed to supplement rather than displace the civilian penal system, and such concurrent jurisdiction affords the pertinent authorities a choice of forum in which to prosecute the offender, an election generally resolved by considerations of comity and relevant military and civilian interests. *See, e.g., United States v. Debevoise*, 799 F.2d 1401, 1403 (9th Cir.1986); *United States v. Mariea*, 795 F.2d 1094, 1101 (1st Cir.1986); *United States v. Colon-Padilla*, 770 F.2d 1328, 1330–32 (5th Cir.1985); *United States v. Walker*, 552 F.2d 566, 567 (4th Cir.), *cert. denied*, 434

U.S. 848, 98 S.Ct. 157, 54 L.Ed.2d 116 (1977). *See also* R.C.M. 201 (courts-martial jurisdiction).[3] Accordingly, the federal district court in the instant circumstances possessed jurisdiction, concurrent with that of the military tribunal, to try the defendant for his alleged conduct in violation of federal law, absent any double jeopardy implications.

◼ With respect to the issue of double jeopardy, it is apparent that no such constitutional violation can be fashioned from the instant record. Jeopardy does not attach in a criminal case until a defendant is put to trial before the trier of fact, which in a jury trial occurs when a jury is impaneled and sworn and in a non-jury trial when the court formally commences the trial by accepting evidence. *See Crist v. Bretz*, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978); *United States v. Smith*, 584 F.2d 759, 761 (6th Cir.1978), *cert. denied*, 441 U.S. 922, 99 S.Ct. 2030, 60 L.Ed.2d 395 (1979). Inasmuch as the military proceedings in the instant case never reached that point, the subsequent grand jury indictment did not run afoul of double jeopardy principles.

◼ The defendant's sole remaining contention, that the federal grand jury indictment and prosecution contravened due process and general public policy considerations in light of the prior military proceedings, is equally without merit.[4] To prove a

---

**3.** For materials addressing in greater detail the procedure and jurisdiction of courts-martial and the relationship of the military justice system to civilian judicial proceedings, *see, e.g.,* D. Schlueter, Military Criminal Justice: Practice and Procedure §§ 4–10–12 (2d ed. 1987); H. Moyer, Jr., Justice and the Military §§ 1–600–15 (1972); M. Kadish, G. Roberts & R. Brofman, 3 Criminal Defense Techniques, *Defense of Servicemen* (Ch. 61) (M. Eisenstein, S. Allen & D. Winston eds. 1986); 13 Wright, Miller & Cooper Federal Practice & Procedure § 3508 at 35–36 (1984); 17 Wright, Miller & Cooper *supra*, § 4106 at 280 (1978); 3 Fed.Proc. L.Ed., *Armed Forces* §§ 5:60–:89, 5:383–:413 (1981 & Supp. 1986); Annot., 14 A.L.R. Fed. 152; Annot., 15 A.L.R.2d 387; 54 Am.Jur.2d, *Military and Civil Defense* §§ 210–86 (1971 & Supp. 1986); 6 C.J.S., *Armed Services* §§ 153–91 (1975 & Supp. 1986). *See also generally* R. Rosen, *Civilian Courts and the Military Justice System: Collateral Review of Courts-Martial,* 108 Mil.L.Rev. 5 (1985).

**4.** The court notes at this juncture that, although the defendant on appeal (as did the district court in its bench ruling on the motion to dismiss) made reference to the right to a speedy trial, he did not vigorously press any claim in this regard, whether premised upon the Speedy Trial Act (STA) or constitutional provisions. In any case, as the district court correctly concluded, the prosecution of the criminal action in the federal district court by the United States Attorney's office proceeded expeditiously and in accordance with the STA. With respect to the constitutional guarantee to a speedy trial embodied in the Sixth Amendment, the defendant failed to establish that the four factors pertinent to such an inquiry, namely, the length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant, militated in favor of finding a Sixth Amendment violation on these facts. *See United States v. Loud Hawk,* 474 U.S. 302, 106 S.Ct. 648, 655, 88 L.Ed.2d 640 (1986); *United States v. MacDonald,* 456 U.S. 1, 6–9, 102 S.Ct. 1497, 1501–02, 71

violation of the Fifth Amendment due process clause, the defendant must demonstrate that the challenged actions are inconsistent with fundamental fairness. *See generally* 1 W. LaFave & J. Israel, Criminal Procedure § 2.4 (1984). The Supreme Court in *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977), emphasized the constricted parameters of such an inquiry:

> [T]he Due Process Clause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment. Judges are not free, in defining "due process," to impose on law enforcement officials our "personal and private notions" of fairness and to "disregard the limits that bind judges in their judicial function." *Rochin v. California*, 342 U.S. 165, 170, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952). Our task is more circumscribed. We are to determine only whether the action complained of ... violates those "fundamental conceptions of justice which lie at the base of our civil and political institutions," *Mooney v. Holohan*, 294 U.S. 103, 112, 55 S.Ct. 340, 342, 79 L.Ed. 791 (1935), and which define "the community's sense of fair play and decency," *Rochin v. California, supra*, 342 U.S., at 173, 72 S.Ct. at 210. See also *Ham v. South Carolina*, 409 U.S. 524, 526, 93 S.Ct. 848, 850, 35 L.Ed.2d 46 (1973); *Lisenba v. California*, 314 U.S. 219, 236, 62 S.Ct. 280, 289, 86 L.Ed. 166 (1941); *Hebert v. Louisiana*, 272 U.S. 312, 316, 47 S.Ct. 103, 104, 71 L.Ed. 270 (1926); *Hurtado v. California*, 110 U.S. 516, 535, 4 S.Ct. 111, 120, 28 L.Ed. 232 (1884).

*Id.* at 790, 97 S.Ct. at 2049.

■ While the courts retain inherent supervisory authority over the law enforcement process which culminates in the criminal proceedings brought before them, courts may not utilize their supervisory powers to fashion remedies calculated to deter perceived future misconduct where the defendant has not suffered an infringement of a constitutional right. *See United States v. Payner*, 447 U.S. 727, 735, 100 S.Ct. 2439, 2446, 65 L.Ed.2d 468 (1980); *United States v. Gjieli*, 717 F.2d 968, 977–79 (6th Cir.1983), *cert. denied*, 465 U.S. 1101, 104 S.Ct. 1595, 80 L.Ed.2d 127 (1984). Even under circumstances where a constitutional right of the defendant has been violated, deliberately or otherwise, the defendant is entitled to the extreme sanction of dismissal of the indictment only where he can prove that he was demonstrably prejudiced by the violation. *See United States v. Mechanik*, 475 U.S. 66, 106 S.Ct. 938, 942–43, 89 L.Ed.2d 50 (1986); *United States v. Morrison*, 449 U.S. 361, 365, 101 S.Ct. 665, 668, 66 L.Ed.2d 564 (1981). *See also United States v. Loud Hawk*, 474 U.S. 302, 106 S.Ct. 648, 657, 88 L.Ed.2d 640 (1986) ("severe remedy of dismissing the indictment").[5]

L.Ed.2d 696 (1982); *Barker v. Wingo*, 407 U.S. 514, 530–33, 92 S.Ct. 2182, 2192–93, 33 L.Ed.2d 101 (1972); *Redd v. Sowders*, 809 F.2d 1266, 1268–72 (6th Cir.1987); *United States v. Atisha*, 804 F.2d 920, 929 (6th Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987); *United States v. Holyfield*, 802 F.2d 846, 848 (6th Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 1298, 94 L.Ed.2d 154 (1987). Similarly, the defendant did not demonstrate that he was subjected to excessive *pre* indictment delay, which, although cognizable under the due process clause of the Fifth Amendment rather than the Sixth Amendment speedy trial clause, required a showing that the defendant suffered actual and substantial prejudice as a result of the delay and that such delay was intentionally pursued by the government to gain a tactical advantage which offended fundamental conceptions of justice, fair play, and decency. *See MacDonald*, 456 U.S. at 6–9, 102 S.Ct. at 1501–

02; *United States v. Lovasco*, 431 U.S. 783, 788–90, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977); *United States v. Marion*, 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971); *Atisha*, 804 F.2d at 928; *United States v. Lawson*, 780 F.2d 535, 541–42 (6th Cir.1985); *United States v. Duncan*, 763 F.2d 220, 222 (6th Cir.1985); *United States v. Greene*, 737 F.2d 572, 574 (6th Cir. 1984).

5. Typically the issue of dismissal of a criminal indictment for alleged prosecutorial or governmental misconduct arises in the context of purportedly prejudicial actions of the prosecutor before the grand jury in seeking an indictment. Under limited circumstances, a court may dismiss an indictment for such prosecutorial misconduct before the grand jury on the basis of Fifth Amendment due process or the court's inherent supervisory powers. *See, e.g., United States v. Venegas*, 800 F.2d 868, 869 (9th Cir.

In the instant matter, the military convening authority, Gen. Patrick, was empowered pursuant to applicable military rules to withdraw the charges preferred against the defendant "for any reason" at any time before findings of the court-martial were announced. R.C.M. 604(a). It is well settled that the procedural aspects of the administration of criminal justice abound with situations in which the exercise of discretion by a myriad of participants occupies a significant role in determining the destiny of an alleged offender. *See generally* W. LaFave & A. Scott, Criminal Law 18 (1972). *Cf. McCleskey v. Kemp,* —— U.S. ——, 107 S.Ct. 1756, 1768–69, 1777, 95 L.Ed.2d 262 (1987); *United States v. Nathan,* 816 F.2d 230, 234 (6th Cir.1987). Prosecuting authorities in particular have historically exercised wide latitude in initiating, prosecuting, or dismissing criminal actions within the parameters evidenced in this case without implications of shocking the conscience nor of violating fundamental conceptions of justice, fair play, and decency.[6]

The determination of the United States Attorney to subsequently proceed with prosecution of the defendant in federal district court was itself a decision of a uniquely discretionary character. The Supreme Court in *Wayte v. United States,* 470 U.S. 598, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985), recently elaborated upon the considerable leeway of the Government in this regard:

In our criminal justice system, the Government retains "broad discretion" as to whom to prosecute. *United States v. Goodwin,* 457 U.S. 368, 380, n. 11, 102 S.Ct. 2485, 2492, n. 11, 73 L.Ed.2d 74 (1982); accord, *Marshall v. Jerrico, Inc.,* 446 U.S. 238, 248, 100 S.Ct. 1610, 1616, 64 L.Ed.2d 182 (1980). "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978). This broad discretion rests large-

---

1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1325, 94 L.Ed.2d 177 (1987); *United States v. Rodriguez,* 738 F.2d 13, 16–17 (1st Cir.1984); *United States v. Pino,* 708 F.2d 523, 530–31 (10th Cir. 1983); *United States v. Pabian,* 704 F.2d 1533, 1539–40 (11th Cir.1983); *United States v. Cederquist,* 641 F.2d 1347, 1352 (9th Cir.1981). Applying the foregoing principles, this circuit has held that a court may not order dismissal of an indictment under its supervisory power unless the defendant has demonstrated that prosecutorial misconduct is a longstanding or common abuse in the district and that he has been prejudiced by the abusive actions. *See United States v. Griffith,* 756 F.2d 1244, 1249 (6th Cir.), *cert. denied,* 474 U.S. 837, 106 S.Ct. 114, 88 L.Ed.2d 93 (1985). This circuit has also consistently concluded that alleged due process violations were not established nor was the extraordinary remedy of dismissal of the indictment or reversal of a conviction warranted on the facts where the defendant raised a claim of assertedly outrageous conduct on the part of the police or government investigators which preceded and purportedly tainted the subsequent indictment and prosecution of the criminal case. *See United States v. Davis,* 809 F.2d 1194, 1209 (6th Cir.1987); *United States V. Qaoud,* 777 F.2d 1105, 1110–11 (6th Cir.1985); *United States v. Robinson,* 763 F.2d 778, 785–86 (6th Cir.1985); *United States v. Norton,* 700 F.2d 1072, 1075–76 (6th Cir.), *cert. denied,* 461 U.S. 910, 103 S.Ct. 1885, 76 L.Ed.2d 814 (1983); *United States v.*

*Bowling,* 666 F.2d 1052, 1054 (6th Cir.1981), *cert. denied,* 455 U.S. 960, 102 S.Ct. 1475, 71 L.Ed.2d 680 (1982); *United States v. Brown,* 635 F.2d 1207, 1211–14 (6th Cir.1980); *United States v. Leja,* 563 F.2d 244, 245–47 (6th Cir.1977), *cert. denied,* 434 U.S. 1074, 98 S.Ct. 1263, 55 L.Ed.2d 780; 436 U.S. 948, 98 S.Ct. 2853, 56 L.Ed.2d 790 (1978). *See generally* Annot., 57 A.L.R.Fed. 824.

**6.** The defendant's reliance upon language of the Supreme Court in *United States v. MacDonald,* 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982), is misplaced. In *MacDonald,* the Court concluded that the interim period of time between the dismissal of military charges and the subsequent indictment by a federal grand jury could not be considered in determining whether the delay in bringing the defendant to trial violated his Sixth Amendment right to a speedy trial. While the Court did observe in that case that the defendant was free of restrictions during that interim period and that there had been no allegation that military authorities had acted in bad faith in dismissing the military charges and later reinstituting charges as contained in the grand jury indictment to evade the defendant's speedy trial rights, *id.* at 10 & n. 12, 102 S.Ct. at 1503 & n. 12, the Court was not faced with nor did it address the question presented herein, namely whether maintenance of the federal civilian prosecution subsequent to the withdrawal of charges by military authorities was barred by due process or other considerations.

ly on the recognition that the decision to prosecute is particularly ill-suited to judicial review. Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake. Judicial supervision in this area, moreover, entails systemic costs of particular concern. Examining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy. All these are substantial concerns that make the courts properly hesitant to examine the decision whether to prosecute.

*Id.* at 607–08, 105 S.Ct. at 1531.[7]

There was no allegation in this case that the United States Attorney's office itself engaged in bad faith or misconduct of any sort in assuming prosecution of the matter. Moreover, the defendant failed to articulate any substantial actual prejudice to or impairment of his defense against the indictment as a result of the procedural course of the action, nor can this court discern any cognizable prejudice to his position. Dismissal of the federal grand jury indictment based on public policy, supervisory, or other considerations to assertedly bolster future compliance with pertinent time requirements imposed in the context of the independent military court system, as the defendant has urged on appeal, would in these circumstances constitute an improvident exercise of authority.[8] In sum, the instant federal prosecution did not violate the defendant's statutory or constitutional speedy trial rights or double jeopardy considerations, did not rise to a level violative of due process, did not result in actual prejudice to the defendant, and did not warrant the extraordinary exercise of supervisory authority or the extreme sanction of dismissal of the indictment.

Accordingly, the judgment of the district court dismissing the indictment is REVERSED and the case is REMANDED to the district court for further proceedings consistent with the foregoing opinion.

---

**7.** This court notes that the defendant asserted no claim of purported selective prosecution by the Government in either the district court or on appeal and that such a position would not be meritorious in any case in light of the stringent standards that a defendant must satisfy in order to establish such a claim. *See Wayte,* 470 U.S. at 607–10, 105 S.Ct. at 1531–32; *United States v. Bustamante,* 805 F.2d 201, 202 (6th Cir.1986); *United States v. Hazel,* 696 F.2d 473, 474–75 (6th Cir.1983).

**8.** In light of the instant disposition, this court need not and does not examine the merits of the defendant's interpretation of the pertinent military speedy trial provisions as they might have potentially impacted upon his court-martial prosecution prior to the withdrawal of military charges.