J-S19021-18

2018 PA Super 161

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES ARCELAY | : | |
| | : | |
| Appellant | : | No. 2965 EDA 2016 |

Appeal from the Judgment of Sentence August 18, 2016
In the Court of Common Pleas of Montgomery County Criminal Division at
No(s):  CP-46-SA-0000672-2016

BEFORE: SHOGAN, J., NICHOLS, J., and PLATT, J.[*]

OPINION BY NICHOLS, J.:                    **FILED JUNE 12, 2018**

Appellant James Arcelay appeals from the judgment of sentence of three months' probation following a bench trial and conviction for the summary offense of cruelty to animals.[1]  Appellant challenges whether the trial court had jurisdiction because the offense occurred on a military installation, as well as the sufficiency of the evidence.  We affirm.

We adopt the facts and procedural history set forth by the trial court's decision:

> On Sunday, July 12, 2015, Officer Edward Timcho of the Horsham Township Police Department responded to a radio call at the Willow Grove Naval Air Station to investigate a report of cruelty to animals for leaving two (2) dogs in a car for several hours.  Officer Timcho arrived at the Base at 12:03 p.m. and located the vehicle in question in a parking lot with the assistance of Captain Erin M. Thomson of the United States Army.  Captain Thomson and

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 5511(c)(1) (repealed 2017).

several Reserve Army soldiers informed Officer Timcho that they had observed two small Yorkies inside the car for up to two (2) hours without food or water. The Reserve soldiers had gained access to the vehicle without causing any damage and removed the dogs. They described the dogs to Officer Timcho as "lethargic, sleepy, wet and panting" on removal from the car. Captain Thomson took the Yorkies into an air-conditioned building and gave them water. Officer Timcho did not know what time the dogs had been removed from the car and taken inside. Officer Timcho was able to determine that the temperature outside the vehicle at the time of his arrival was 87 degrees, but that it was significantly warmer inside of the car. There was no shade in the vicinity of the vehicle when the officer arrived and the front windows were slightly open. According to a meteorology report, the temperature that day reached a high of 90 degrees.

Appellant, an Army Reservist,[2] now retired, had arrived on the Base that morning in plain clothes to help set up for, and then attend, a family picnic event. There was no reservist training or meeting scheduled for that Sunday. When Appellant returned to his car shortly after noon, Officer Timcho explained to Appellant that he would receive a citation in the U.S. mail. Appellant acknowledged that the car belonged to him and that the dogs were in his care.

After receiving the citation, Appellant entered a plea of not guilty and eventually appeared before Magisterial District Judge Harry J. Nesbitt III on April 6, 2016. Judge Nesbitt found Appellant guilty of the summary offense and imposed fines and costs in the amount of Four Hundred Fifty-Four Dollars and Ninety-Six Cents ($454.96). On May 31, 2016, Appellant filed a motion to file a summary appeal *nunc pro tunc*, claiming that he had no income for the past year. This court granted his motion on June 27, 2016.

The undersigned presided over the Summary Appeal *de novo* Hearing on Thursday, August 18, 2016, at which both Officer Timcho and Appellant testified. Appellant appeared *pro se*.

---

[2] We note that the trial court later opined that there was no evidence to establish that Appellant was in the Federal military. Trial Ct. Op., 12/18/17, at 17. The record, however, was uncontradicted that Appellant was in the reserves of the United States Army. N.T., 8/18/16, at 14.

Officer Timcho testified regarding his investigation into the events preceding his arrival and what he did as a result of the information he gathered. Officer Timcho identified the five (5) photographs he took depicting the inside and the outside of the vehicle as well as the surrounding area. On cross-examination by Appellant, Officer Timcho testified again that the dogs had been in the car for approximately two (2) hours according to Captain Thomson before removal, that there was no shading anywhere near the car in the asphalt parking lot and that Officer Timcho had not seen a water bowl inside or near the car.[3]

Appellant testified that he had retired from the Reserves as of July 31, 2016, was currently unemployed and without a source of income. Appellant testified that he had arrived in plain clothes on Base at approximately 8:30 a.m. for a family picnic. There was no Reserve meeting scheduled for that day. Rather, he was there to help load tables into a truck that they were then taking to a nearby park for the picnic. Appellant explained that he left the two Yorkie puppies in his car with a bowl of water and went back to check on them every fifteen (15) minutes. Appellant testified that around 9:00 a.m. he was riding in the truck on the way to the park with a noncommissioned officer ("NCO") when the NCO got word and told Appellant that there was a problem with the dogs.

Appellant testified that when he located the dogs, he was told to finish what he was doing and he could pick them up once he had finished. Indeed, once he finished setting up the tables, he returned and retrieved the puppies and went to the picnic. Appellant also testified that he was approached by two MPs who wanted his side of the story around 10:00 a.m. and while they were talking, a police car arrived. Finally, Appellant testified that he believes the public overreacts when they see dogs in a car and he was upset that someone had gone into his vehicle to remove the dogs.

As a result of the evidence presented at the hearing, the court found Appellant guilty of the summary offense but did not assess a fine or costs. Instead, taking Appellant's lack of income into

_____

[3] Appellant did not object to any testimony or evidence.

account, the court placed Appellant on probation for three (3) months.

Trial Ct. Op., 12/18/17, at 1-4 (citations to record omitted). We add that the Commonwealth introduced several photographs of Appellant's vehicle taken from multiple perspectives showing the area around the vehicle, and there was no tree nearby. Commonwealth's Exs. 2-b, 2-e.

Appellant filed a *pro se* motion for reconsideration of his sentence. **See generally** Pa.R.Crim.P. 720(D).[4] Before the trial court ruled on it, Appellant filed a timely *pro se* notice of appeal. We do not reiterate the somewhat lengthy procedural history that followed, but note that, in pertinent part, Appellant was appointed counsel, who filed a timely court-ordered Pa.R.A.P. 1925(b) statement.

Appellant raises the following issues:

1. Whether the Court of Common Pleas had jurisdiction to hear this matter as the alleged crime occurred on a military installation?

2. Whether the evidence was insufficient as a matter of law to find Appellant guilty of cruelty to animals?

Appellant's Brief at 7 (issues reordered to facilitate disposition).

_____

[4] Because this is a summary case appeal, Appellant could not file a post-sentence motion. **See** Pa.R.Crim.P. 720(D) (stating, "[t]here shall be no post-sentence motion in summary case appeals following a trial *de novo* in the court of common pleas").

In support of his first issue, Appellant argues that the trial court lacked jurisdiction because the crime occurred on a military installation. Appellant quotes 51 P.S. § 1-841, and argues that "exclusive and concurrent Federal jurisdiction exists as to the Willow Grove military installation as [Section 1-841[5]] establishes not only that the State involved ceded jurisdiction but also that the United States accepted the cession." *Id.* at 31.[6] Appellant then opines that because, at the time of the offense, he was a member of the Federal military reserves, only a military court could exercise subject matter and personal jurisdiction over him. *Id.* at 31-32.

The trial court erred, Appellant argues, by rejecting his uncontradicted testimony that he was a member of the Federal reserves. *Id.* at 32. Appellant points out that no party disputed his testimony that he was bringing the puppies to members of the military. *Id.* Appellant also disputes the trial court's reliance on 51 Pa.C.S. §§ 5103-5104, because those two statutes apply only to state military forces, and not to the Federal reserves.[7] *Id.* at 33.

_____

[5] We quote and discuss the statute below.

[6] Appellant cites no relevant authority for the proposition that Pennsylvania ceded jurisdiction over the Willow Grove base. Further, as discussed below, the Commonwealth asserts that the United States had closed the base in 2011, and transferred it to Pennsylvania.

[7] Appellant does not acknowledge his own reliance on 51 P.S. § 1-841 (identical to 51 Pa.C.S. § 4104), which, as discussed below, also applies only to state military personnel.

- 5 -

The Commonwealth counters that the Courts of Common Pleas have subject matter jurisdiction over all crimes. Commonwealth's Brief at 18. The Commonwealth agreed with the trial court's reasoning that Pennsylvania has exclusive jurisdiction because Appellant failed to establish Federal exclusive or concurrent jurisdiction. *Id.* at 19.

With respect to personal jurisdiction, the Commonwealth argues that Appellant waived his right to object to personal jurisdiction by appearing before the trial court. *Id.* at 21. The Commonwealth notes that Appellant never objected to personal jurisdiction at the *de novo* trial. *Id.*

Regardless, the Commonwealth argues that a military court has personal jurisdiction only over "members of a reserve component in federal service on active duty, as well as those in federal service on inactive-duty training." *Id.* at 20 (alterations, emphases, and brackets omitted) (quoting the discussion section of Rule for Courts-Martial 202(a)).[8] The Commonwealth asserts that the record established that Appellant was not in federal service on inactive-duty training, because he testified he was there to attend a picnic. *Id.* at 22.

---

[8] The discussion portion of R.C.M. 202(a) states, "Members of a reserve component in federal service on active duty, as well as those in federal service on inactive-duty training, are subject to the code. Moreover, members of a reserve component are amenable to the jurisdiction of courts-martial notwithstanding the termination of a period of such duty." R.C.M. 202(a) discussion.

Lastly, the Commonwealth adds that Willow Grove Naval Air Station is a state—and not a Federal—facility because the Pennsylvania Air National Guard took possession in 2011, and renamed it Horsham Air Guard Station. *Id.* at 24-25 (citation omitted).[9]

**Subject Matter Jurisdiction**

We first address Appellant's challenge to the trial court's subject matter jurisdiction. The standard of review for a question of subject matter jurisdiction is *de novo* and the scope of review is plenary. ***Commonwealth v. Bethea***, 828 A.2d 1066, 1071 n.5 (Pa. 2003). We add that we may affirm the trial court on any basis. ***Commonwealth v. Bethea***, ___ A.3d ___, 2018 WL 1917054, *7 (Pa. Super. 2018).

By way of background, "[s]ubject matter jurisdiction relates to the competency of a court to hear and decide the type of controversy presented. Jurisdiction is a matter of substantive law." ***Bethea***, 828 A.2d at 1074 (citations omitted). "Whether a court has subject matter jurisdiction over an

_____

[9] We are constrained to note that no party addressed at trial whether Willow Grove Naval Air Station is within the sole possession and control of the Commonwealth, which would have seemingly resolved many jurisdictional issues. While a "court may take judicial notice of an indisputable adjudicative fact," ***In re D.S.***, 622 A.2d 954, 958 (Pa. Super. 1993), we question whether it is common knowledge that the military base formerly known as Willow Grove Naval Air Station, then a Federal military installation, was purportedly transferred in 2011 to the Pennsylvania Air National Guard and is now a state military installation.

action is a fundamental issue of law which may be raised at any time in the course of the proceedings, including by a reviewing court *sua sponte*." **In re Administrative Order No. 1-MD-2003**, 936 A.2d 1, 5-6 (Pa. 2007) (citation omitted).

"[A]ll courts of common pleas have statewide subject matter jurisdiction in cases arising under the Crimes Code." **Bethea**, 828 A.2d at 1074; **accord** 42 Pa.C.S. § 931.[10] But for a Federal military court, "the proper exercise of court-martial jurisdiction over an offense [depends] on one factor: the military status of the accused." **Solorio v. United States**, 483 U.S. 435, 439 (1987) (citations omitted). In other words, the "test for jurisdiction is one of **status**, namely, whether the accused in the court-martial proceeding is a person who can be regarded as falling within the term land and naval [f]orces." **Id.** (internal quotation marks, ellipses, and citation omitted). The test is based on status because "the scope of court-martial jurisdiction over offenses committed by servicemen was a matter reserved for Congress."[11] **Id.** at 440.

_____

[10] In the case at hand, we acknowledge that Appellant appealed from a trial *de novo* from the magistrate judge's initial determination of guilt. **See generally** 42 Pa.C.S. § 932.

[11] In reaching its holding, the **Solorio** Court overruled its prior decision in **O'Callahan v. Parker**, 395 U.S. 258 (1969), which held "that a military tribunal may not try a serviceman charged with a crime that has no service connection," a jurisdictional test that had prevailed for almost two decades. **Solorio**, 483 U.S. at 440 (summarizing **O'Callahan**).

A military court, however, may have concurrent jurisdiction with a non-military court over criminal offenses. ***United States v. Talbot***, 825 F.2d 991, 997 (6th Cir. 1987);[12] ***Boeckenhaupt v. United States***, 537 F.2d 1182, 1183 (4th Cir. 1976) (*per curiam*) (holding district court and military court had concurrent jurisdiction to resolve espionage charge); ***United States v. Noriega***, 808 F. Supp. 791, 801 (S.D. Fla. 1992) (stating, in resolving whether captured foreign leader could be incarcerated in Federal prison, that "federal district courts have concurrent jurisdiction with military courts over all violations of the laws of the United States committed by military personnel"); ***Owens v. United States***, 383 F. Supp. 780, 782 (M.D. Pa. 1974) (noting district court had concurrent jurisdiction to entertain a guilty plea by a serviceman to circulating bad checks on military base because "the

_____

[12] The United States Court of Appeals for the Sixth Circuit held:

> it is well established that, under proper circumstances, as here, military and civilian courts enjoy concurrent jurisdiction to prosecute armed forces personnel for criminal wrongdoing, inasmuch as the military justice system was designed to supplement rather than displace the civilian penal system, and such concurrent jurisdiction affords the pertinent authorities a choice of forum in which to prosecute the offender, an election generally resolved by considerations of comity and relevant military and civilian interests.

***Talbot***, 825 F.2d at 997. We note that except for decisions of the United States Supreme Court, federal court decisions do not bind this Court, although they may be persuasive. ***See NASDAQ OMX PHLX, Inc. v. PennMont Secs.***, 52 A.3d 296, 303 (Pa. Super. 2012).

jurisdiction to try and punish for a crime is not vested exclusively in a military court but is concurrent with the civilian tribunal having jurisdiction over the locus criminis." (citing **Caldwell v. Parker**, 252 U.S. 376, 382 (1920))).[13]

Here, to the extent Appellant contends that only a military court had subject matter jurisdiction to court-martial him, he is incorrect. It is well-settled that military and non-military courts may exercise concurrent subject matter jurisdiction over criminal offenses. **See, e.g.**, **Talbot**, 825 F.2d at 997.

Appellant, however, has suggested that because the offense occurred at Willow Grove base, the Pennsylvania trial court had no jurisdiction to prosecute because the base was subject to Federal "exclusive and concurrent" jurisdiction. Appellant's Brief at 31. In support, Appellant cited Section 1-841, which stated "No officer or enlisted man shall be arrested on any warrant, except for treason or felony, while going to, remaining at, or returning from, a place where he is ordered to attend for military duty." **Id.** (quoting 51 P.S.

---

[13] **See also United States v. Dutil**, 14 M.J. 707, 709 (N-M. Ct. Crim. App. 1982) ("It is well-settled that the same acts may constitute an offense against both the United States and the particular state in which they may be committed and that a member of the military may be tried by both sovereigns. However, it is for the involved sovereigns and not the criminal to settle which shall inflict punishment, as long as constitutional rights to a full defense are adequately preserved in both jurisdictions." (citations omitted)). Although **Dutil** is a decision from the Military Service Courts of Criminal Appeals, we may find decisions from those courts informative. **See NASDAQ OMX PHLX**, 52 A.3d at 303.

§ 1-841, which was repealed in 1975, and replaced by an identical provision

at 51 Pa.C.S. § 4104).[14]

The rules of statutory construction are well-settled:

The Statutory Construction Act, 1 Pa.C.S. §§ 1901-1991, sets
forth principles of statutory construction to guide a court's efforts
with respect to statutory interpretation. In so doing, however, the
Act expressly limits the use of its construction principles. The
purpose of statutory interpretation is to ascertain the General
Assembly's intent and to give it effect. In discerning that intent,
courts first look to the language of the statute itself. If the
language of the statute clearly and unambiguously sets forth the
legislative intent, it is the duty of the court to apply that intent
and not look beyond the statutory language to ascertain its
meaning. Courts may apply the rules of statutory construction
only when the statutory language is not explicit or is ambiguous.

. . . We must read all sections of a statute together and in
conjunction with each other, construing them with reference to
the entire statute. When construing one section of a statute,
courts must read that section not by itself, but with reference to,
and in light of, the other sections. Statutory language must be
read in context, together and in conjunction with the remaining
statutory language.

Every statute shall be construed, if possible, to give effect to all
its provisions. We presume the legislature did not intend a result
that is absurd, impossible, or unreasonable, and that it intends
the entire statute to be effective and certain. When evaluating
the interplay of several statutory provisions, we recognize that
statutes that relate to the same class of persons are *in pari
materia* and should be construed together, if possible, as one
statute.

---

[14] We hereinafter refer to Section 1-841 as Section 4104, because that is the
current citation.

***Retina Assocs. of Greater Phila., Ltd. v. Retinovitreous Assocs., Ltd.***,
176 A.3d 263, 270 (Pa. Super. 2017) (citations and quotation marks omitted).

Here, the plain language of Section 4104 does not discuss jurisdiction, let alone exclusive or concurrent jurisdiction. ***See id.*** It does not address whether Pennsylvania ceded jurisdiction over Willow Grove military base to the United States. ***See id.***

Moreover, Section 4104 applies only to members of the Pennsylvania National Guard, Pennsylvania Guard, and Militia. ***See id.***; ***see generally*** Title 51, Part II, Pennsylvania National Guard, Pennsylvania Guard and Militia (setting forth, among other items, the organization, pay, and rights and immunities—including 51 Pa.C.S. § 4104—of all members of the aforementioned organizations); 51 Pa.C.S. § 5103 (stating military justice section "applies to all members of the **State** military forces who are not in a **Federal** status under which they are subject to the Uniform Code of Military Justice" (emphases added)).

Finally, even if Section 4104 applied to Appellant, it simply bars arrests pursuant to a warrant. ***See*** 51 Pa.C.S. § 4104.[15] Appellant was issued a summary citation for animal cruelty and was not arrested.

---

[15] ***See also Commonwealth v. Barnhart***, 933 A.2d 1061, 1064 (Pa. Super. 2007) (holding Section 4104 did not apply to the defendant, who was a member of the Pennsylvania National Guard, because he was arrested without a warrant for driving under the influence).

Appellant therefore has not established that the trial court lacked jurisdiction over an offense occurring at Willow Grove base.  We therefore affirm the trial court's determination that it had subject matter jurisdiction, albeit on different grounds.[16]  **See Bethea**, ___ A.3d at ___, 2018 WL 1917054 at *7.

### Personal Jurisdiction

As set forth above, Appellant also challenged whether the trial court could exercise personal jurisdiction over him.  Briefly, "[j]urisdiction of the person . . . may be created by the consent of a party, who thereby waives any objection to defects in the process by which he is brought before the court."  **Commonwealth v. Little**, 314 A.2d 270, 272 (Pa. 1974) (citations omitted); **see also** 42 Pa.C.S. § 5301(a)(1).  Here, because Appellant failed to object to the trial court's exercise of personal jurisdiction over him, he has waived any objection thereto.  **See Little**, 314 A.2d at 272.

### Sufficiency of the Evidence

Having resolved the jurisdictional issues, we address Appellant's last issue, which challenges the sufficiency of the evidence.  In support, Appellant assails the hearsay nature of the testimony that convicted him.  He posits that the evidence was "weak and inconclusive" because there was no indication of

_____

[16] The trial court opined that there was no record evidence that it lacked subject matter jurisdiction.  Trial Ct. Op. at 17.

what the temperature was inside the vehicle while the puppies were present. Appellant's Brief at 19. Appellant claims there was little evidence that his actions were wanton and cruel. *Id.* at 20, 27.

The standard of review for a challenge to the sufficiency of evidence is well-settled:

> A claim challenging the sufficiency of the evidence presents a question of law. We must determine whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt. We must view evidence in the light most favorable to the Commonwealth as the verdict winner, and accept as true all evidence and all reasonable inferences therefrom upon which, if believed, the fact finder properly could have based its verdict.

*Commonwealth v. McFadden*, 156 A.3d 299, 303 (Pa. Super. 2017) (citation omitted).

> Section 5511, which was repealed in 2017, follows:

> A person commits an offense if he wantonly or cruelly illtreats, overloads, beats, otherwise abuses any animal, or neglects any animal as to which he has a duty of care, whether belonging to himself or otherwise, or abandons any animal, or deprives any animal of necessary sustenance, drink, shelter or veterinary care, or access to clean and sanitary shelter which will protect the animal against inclement weather and preserve the animal's body heat and keep it dry.

18 Pa.C.S. § 5511(c)(1) (repealed 2017).

Our Courts have defined the term "wanton" in the animal cruelty statute as "unreasonably or maliciously risking harm while being utterly indifferent to the consequences. Wantonness may be properly understood to be recklessness with utter indifference to the resulting consequences."

- 14 -

***Commonwealth v. Shickora***, 116 A.3d 1150, 1155 (Pa. Super. 2015)

(citation omitted) (affirming conviction for animal cruelty because defendant

"unreasonably risk[ed] harm" to the animals in her care).

In affirming Appellant's conviction, the trial court reasoned as follows:

[T]he evidence demonstrated that Appellant left two Yorkie puppies unattended in the back of his car in the morning of what turned into a hot mid-July day. The photographs taken by Officer Timcho depict a vehicle with a dark interior, parked in an asphalt parking lot, with no shade in sight. Captain Thomson and other Reserve personnel were concerned enough after approximately two (2) hours that they removed the puppies from the car, took them into an air conditioned building, got them water and called the Horsham Township Police Department. The puppies were described to Officer Timcho as lethargic, sleepy, wet and panting on removal from the hot car. Although there may have been shade over the car as Appellant stated there was when he arrived in the lot, there was no shade anywhere near the car when Officer Timcho arrived at 12:03 p.m.[17] The temperature outside of the car at that time was 87 degrees, on its way to 90 degrees. However, Officer Timcho testified that it was much hotter inside of the vehicle. The [trial court] found the officer's testimony to be credible.

The court did not find Appellant's testimony that he checked on the dogs every fifteen (15) minutes and that they were only in the vehicle for thirty (30) minutes to be credible. In addition, the court found Appellant demonstrated an indifference to the consequences of leaving the dogs in the car on that day and was more concerned and upset that people trying to assist the puppies entered his vehicle to do so without his permission. The Commonwealth presented sufficient evidence to prove beyond a reasonable doubt that Appellant had 1) recklessly neglected the two Yorkie puppies that were in his care and 2) deprived them of shelter which would have protected them against the inclement

_____

[17] We add that the Commonwealth introduced several photos depicting the exterior of Appellant's vehicle and the surrounding area, and no photo depicted a nearby tree. ***See*** Commonwealth's Ex. 2.

- 15 -

weather and preserved their body heat and kept them dry by leaving them unattended in the back of a car parked in the sun in a parking lot on a hot mid-July day for a period of up to two (2) hours without regard to the consequences.

Trial Ct. Op. at 9-10. We note that Appellant, acting *pro se*, did not object to any testimony, including the hearsay testimony. Having reviewed the record and all reasonable inferences therefrom in the light most favorable to the Commonwealth, we discern no error in the trial court's reasoning. ***See***

***McFadden***, 156 A.3d at 303.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/12/18