J-A19024-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RAYMOND CORLL | : | |
| | : | |
| Appellant | : | No. 934 MDA 2017 |

Appeal from the Judgment of Sentence Entered May 12, 2017
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0001815-2016,
CP-36-CR-0005325-2016

BEFORE: GANTMAN, P.J., NICHOLS, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY NICHOLS, J.:                    **FILED NOVEMBER 20, 2018**

Appellant Raymond Corll appeals from the judgment of sentence entered following a jury trial and his convictions for perjury,[1] false swearing,[2] official oppression,[3] and simple assault.[4]  Appellant challenges the sufficiency of the evidence for his convictions for perjury and false swearing, whether the trial court erred by not charging the jury on justifiable use of non-deadly force,

---

[1] 18 Pa.C.S. § 4902(a).

[2] 18 Pa.C.S. § 4903(a)(1).

[3] 18 Pa.C.S. § 5301(1).

[4] 18 Pa.C.S. § 2701(a)(1).

and whether it abused its discretion by imposing an excessive sentence. We affirm.

We present the following as background for Appellant's convictions for perjury and false swearing.[5] Appellant was a police officer at the time of the above offenses. R.R. at 112a.[6] Appellant testified at the summary trial of Steve Widdowson for public intoxication as follows:

> [Appellant[7]]: On the evening of the 7th into the 8th of March 2014, I was working overtime detail for a quality of life enforcement with the city police. I had a partner[, now-Lieutenant James Carpenter,] that evening. We were both in police uniforms. I was the passenger. My partner was the operator of a full-sized marked SUV with a badge on the side of the vehicle and an emergency light on the top. At approximately 0150 hours, which would have been Saturday morning, 8th of March 2014, we were going north through the 100 block of North Queen Street. As we're going through the block, up ahead of us to our right-hand side, which would have been the east side of the street, we saw a couple[, *i.e.*, Widdowson and his friend, Tami Jones,] staggering on the sidewalk, also walking north, the same direction we were going. They were staggering. They were going from one end of the sidewalk to the other. When I say one end to the other, curbside all the way to the width of the sidewalk.
>
> My partner slowed the vehicle and we were just following them and watching what they were doing. As we approached the intersection, which is Chestnut Street, we had a green light and the couple had stepped to the curb. I actually thought they were going to step in front of us into the street. That didn't happen.

---

[5] We state the facts in the light most favorable to the Commonwealth as the verdict-winner. ***Commonwealth v. Arcelay***, 190 A.3d 609, 617 (Pa. Super. 2018).

[6] We cite to the reproduced record for the parties' convenience.

[7] Appellant read into the instant trial record portions of his direct-examination testimony at the underlying summary trial, including the questions.

My partner proceeded through the intersection. I was still watching the couple. I was concerned for their safety. They were staggering quite a bit and were on the curb.

At that time, the male party, later identified as the defendant, Steven Widdowson, seated at the defense table with the blue shirt and blue tie, yelled, what the fuck are you looking at. My partner made a right-hand turn. I exited the vehicle, told him to stop. [Widdowson] made a step towards the intersection as if to cross the street. I grabbed him. I detected a very strong odor of alcohol. At that point, I arrested him for public drunkenness . . . .

*    *    *

[Appellant]: Question, so other than just alcohol on his breath, that was your indication? Answer, and [Widdowson] was staggering from side -- the entire width of the sidewalk which was on the 100 block of North Queen Street by Lancaster Square there. That sidewalk has got to be 15 feet wide. So he was manifestly under the influence of alcohol. He was staggering. He appeared to be unaware of his surroundings, standing on the curb, almost stepping in front of us which we had the green light. He had the do not walk sign.

*Id.* at 112a-15a. We add that during the course of the arrest, Appellant punched Widdowson while he was on the ground. *Id.* at 114a. Based on Appellant's testimony, the district judge convicted Widdowson of public intoxication. Widdowson appealed and requested a trial *de novo*.

The parties do not dispute that Widdowson's counsel subsequently obtained video surveillance of his arrest, which was reviewed by the district attorney. Afterwards, the district attorney dropped the charges against Widdowson and began investigating Appellant. The district attorney's investigation was referred to the Pennsylvania Office of Attorney General, which resulted in Appellant's arrest and charges for the above crimes.

At Appellant's jury trial, Appellant's testimony at Widdowson's summary trial was read into the record, as quoted above. The Commonwealth also introduced video surveillance footage, which was played for the jury. *Id.* at 141a. The video did not depict Widdowson's staggering as Appellant had previously testified at Widdowson's summary trial. *Id.* It was undisputed, however, that the video footage only recorded several seconds of Widdowson's and Jones's walk. *Id.* at 157a, 206a.

Widdowson and Jones also testified, disputing that they were intoxicated or staggering and that Widdowson prompted Appellant's punch. *See, e.g.*, *id.* at 173a-74a, 179a-82a, 215a-16a, 220a, 225a, 230a-31a. Jones specifically denied seeing Widdowson throw a punch, spit, kick, or otherwise provoke Appellant's punch. *Id.* at 174a.[8]

The Commonwealth also called Officer William Hamby, a police officer who arrived to assist Appellant and Carpenter. *Id.* at 272a. Hamby testified he did not observe Widdowson punch, kick, spit, or otherwise fight Appellant. *Id.* at 277a-78a. Hamby stated that because he felt Widdowson did not pose a danger to Appellant or others, Appellant's punch of Widdowson was unwarranted. *Id.* at 279a. Hamby transported Widdowson to the police

---

[8] Jones was also arrested, charged, and convicted of public intoxication. Unlike Widdowson, Jones did not appeal her summary conviction, but the Commonwealth vacated her conviction and expunged her record. We summarize additional portions of the trial testimony, *infra*.

station and testified that other than a faint odor of alcohol, Widdowson did not appear intoxicated. *Id.* at 284a.

Appellant testified in his own defense, reiterating that Widdowson and Jones were staggering. *See, e.g.*, *id.* at 407a. Appellant alleged that he punched Widdowson in self-defense and testified as follows:

> [Appellant's counsel]. Were you aware at some point that other officers had intervened?
>
> [Appellant]. At some point. I'm not -- I got [Widdowson] down on the ground and somebody, I can't even remember if I knew it was [Jones] at the time or not, but somebody came up from behind me and I don't remember if they pushed me, grabbed me or whatever they did but they made contact from behind me, and I went like that, shoved her away, and as I did that, now Mr. Widdowson was facedown on the ground at this point and he pushed up with his left arm and was up facing me like that trying to get up, and I didn't have control of him. Someone else had just come up behind me and made contact with me and I gave him a punch to the face [with Appellant's right hand, which was his non-dominant hand].

*Id.* at 409a-10a; *see also id.* at 407a.

After Appellant rested, the trial court and the parties discussed the proposed jury instructions. Appellant requested that the court instruct the jury on justified use of non-deadly force, specifically that Appellant "did not reasonably believe that it was immediately necessary for him to use force to protect himself against the unlawful use of force by" Widdowson. *Id.* at 448a; *see also id.* at 446a. The court denied Appellant's request, reasoning that it did not recall any testimony that Appellant used force to protect himself from force being used by Widdowson. R.R. at 448a. Appellant properly preserved

- 5 -

his objection. *Id.* The court elected to charge the jury with, among other items, use of non-deadly force to prevent escape of an arrested person. *Id.* at 449a. Following the charge, the jury convicted Appellant on March 30, 2017. The court ordered a pre-sentence investigation report.

At the May 12, 2017 sentencing hearing, the trial court considered, among many other things, the pre-sentence investigation report, and sentenced Appellant to an aggregate sentence of seven to twenty-three-and-one-half months' imprisonment followed by two years' probation. N.T. Sentencing Hr'g, 5/12/17, at 9, 14. On May 19, 2017, Appellant filed a post-sentence motion challenging only the excessiveness of his sentence.[9] The court denied Appellant's motion three hours later. Appellant timely appealed and timely filed a court-ordered Pa.R.A.P. 1925(b) statement.

> Appellant raises the following issues on appeal:
>
> 1. Did the trial court commit an error of law when it denied Appellant's request to instruct the jury on the justifiable use of non-deadly force to prevent Appellant from injury or harm when the evidence clearly supported the issuance of such an instruction?
>
> 2. Was the evidence sufficient to sustain Appellant's convictions for perjury and false swearing?
>
> 3. Did the lower court abuse its discretion in sentencing Appellant to a manifestly excessive sentence of imprisonment where the court based its sentence solely on the severity of the offense and

---

[9] Appellant's motion did not claim the court erred by not charging the jury regarding justifiable use of non-deadly force. Appellant first raised the issue in his Pa.R.A.P. 1925(b) statement.

failed to properly weigh all relevant sentencing factors, including Appellant's military service, lack of criminal history, employment history, community service and expressions of remorse?

Appellant's Brief at 4 (issues reordered to facilitate disposition).

### Jury Charge on Justifiable Use of Non-Deadly Force

In support of his first issue, Appellant argues that the record established he punched Widdowson in self-defense. In Appellant's view, the punch was justified because it occurred "only after the situation 'exploded,' the two men engaged in a scuffle, and he was either pushed or grabbed from behind . . . ." *Id.* at 27. In support, Appellant relies on *Commonwealth v. Brown*, 421 A.2d 660 (Pa. 1980). In Appellant's view, *Brown* stands for the proposition that such a charge must be given when the record supports it. Appellant's Brief at 27-28.

In *Commonwealth v. Sandusky*, 77 A.3d 663 (Pa. Super. 2013), this Court set forth the following guidelines:

> In reviewing a challenge to the trial court's refusal to give a specific jury instruction, it is the function of this Court to determine whether the record supports the trial court's decision. In examining the propriety of the instructions a trial court presents to a jury, our scope of review is to determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested

charge does not require reversal unless the [defendant] was prejudiced by that refusal.

***Sandusky***, 77 A.3d at 667 (citation omitted).

Under the Crimes Code, self-defense falls under the defense of justification, which is a complete defense to criminal culpability. ***See*** 18 Pa.C.S. § 502. The jury instruction at issue follows:

If the defendant only used non-deadly force during the incident in question, the Commonwealth may prove that this use of force was not justified if it can show, beyond a reasonable doubt, any of the following elements . . . :

[a. That the defendant did not reasonably believe that it was immediately necessary for [him] [her] to use force to protect [himself] [herself] against the unlawful use of force by [name of alleged victim]. **The Commonwealth must prove either: (i) that the defendant did not actually believe [he] [she] was in danger of becoming the victim of unlawful force such that [he] [she] needed to use force to defend [himself] [herself] at the moment [he] [she] used it; or, (ii) that while the defendant actually believed [he] [she] needed to use such force, [his] [her] belief was unreasonable in light of all the circumstances known to [him] [her]**. Keep this in mind: a person is justified in using force against another not only when they are in actual danger of unlawful attack but also when they mistakenly, but reasonably, believe that they are. A person is entitled to estimate the necessity of the force he or she employs under the circumstances as he or she reasonably believes them to be at the time. In the heat of conflict, a person who has been attacked ordinarily has neither time nor composure to evaluate carefully the danger and make nice judgments about exactly how much force is needed to protect himself or herself. Consider the realities of the situation faced by the defendant here when you assess whether the Commonwealth has proved beyond a reasonable doubt either that he or she did not believe he or she was actually in danger of unlawful force to the extent that he or she needed to use such force in self-defense, or that, while he or she did believe that, his or her belief was unreasonable. Unlawful force means any form of force, including confinement, that is employed without the consent of the person against whom it is

directed where its use would constitute an offense or actionable tort.

[b. That, (i) in the same encounter with [name of alleged victim], the defendant engaged in conduct that demonstrated [his] [her] intent to use unlawful force against the alleged victim, and, (ii) by that conduct, [he] [[[she] proved the use of force against [himself] [herself]. Conduct that is not itself the unlawful use of force does not constitute the kind of provocation upon which the Commonwealth may rely to prove its case. If you find beyond a reasonable doubt that it is of such a nature, then you must then ask whether it provoked the similar use of force against [him] [her]. In this assessment, the conduct by the defendant may be the initial provocation of the fight, or it may be an act that continues or escalates it. However, even if the defendant was the initial aggressor, or who was the person who escalated the incident to one involving the use of unlawful force, if [he] [she] thereafter withdraws in good faith, making it clear that [his] [her] further intentions are peaceable, and the alleged victim pursues [him] [her] and renews the fight, [he] [she] does not forfeit [his] [her] right to claim justifiable self-defense. If, on the other hand, you find beyond a reasonable doubt that the defendant provoked the use of force against [himself] [herself] by engaging in conduct that showed that [he] [she] intended to cause unlawful force to the alleged victim, you may find that [his] [her] conduct was not justified]. . . .

2. Unless the Commonwealth proves one of these two elements, the use of non-deadly force by the defendant is justified and you must find [him] [her] not guilty of the offense of [offense]. If the Commonwealth does prove one of the elements beyond a reasonable doubt, the actions of the defendant are not justified.

Pa. Suggested Standard Crim. Jury Instructions 9.501 (emphasis added).

In **Brown**, the case cited by Appellant, the trial court instructed the jury on the defendant's right to use deadly force in defense of another but refused to charge the jury on the defendant's right to act in self-defense. **Brown**, 421 A.2d at 661. The **Brown** Court summarized the facts as follows:

On December 24, 1975, [the defendant] shot and killed [the victim] at the Jubilee Bar at 16th and Fountain Streets in Philadelphia. The day before the shooting, [the defendant] was told by his cousin, Estelle Wilson, a barmaid at the Jubilee Bar, that her former boyfriend, the victim, had been beating and threatening to kill her. On December 24, at approximately 7:50 a.m., [the defendant] went to the Jubilee Bar to await the victim's arrival. [The victim] arrived between 9:00-9:30 a.m., went behind the bar and started by beat up Estelle Wilson. [The defendant], noticing that [the victim] had his hand in his pocket, pulled him away from Wilson. [The victim] spun around and produced a gun. [The defendant and victim] struggled over the gun and it fell to the floor. [The defendant] seized the gun and shot the victim in a further struggle for possession of the weapon.

*Id.* at 662. The defendant's defense was that he was justified to use deadly force in order to defend himself. *Id.*

The *Brown* Court identified three factors that would support such a defense:

First, the actor must have reasonably believed himself to be in imminent danger of death or serious bodily harm, and that it was necessary to use deadly force against the victim to prevent such harm. Second, the actor must have been free from fault in provoking or continuing the difficulty which resulted in the slaying. Third, the actor must have violated no duty to retreat.

*Id.* (citations omitted).[10] The *Brown* Court ultimately held that the facts supported such an instruction and thus remanded for a new trial. *Id.* at 661-62.

---

[10] We note that generally, a defendant using only non-deadly force has no duty to retreat. *See* Pa. Suggested Standard Crim. Jury Instructions 9.501.

Here, Appellant has cited only his testimony that someone came up **behind** him and made contact with him. *See* R.R. at 409a. But it was only that contact that prompted Appellant to punch the victim. *See id.* Unlike *Brown*, this case involved non-deadly force and Appellant did not refer this Court to any other evidence justifying a finding of self-defense. *Cf. Brown*, 421 A.2d at 662. Appellant did not refer to evidence of Widdowson's aggression or any other action that would have prompted Appellant to punch Widdowson in self-defense. *See* R.R. at 409a-10a. Indeed, the proposed instruction would have asked the jury to consider whether Appellant used force to protect himself against the unlawful use of force by Widdowson. *See* R.R. at 448a. We disagree with Appellant that *Brown* applies, and thus, we cannot conclude that the instant trial court abused its discretion by refusing to instruct the jury on justifiable use of non-deadly force. *See Sandusky*, 77 A.3d at 667.

### Sufficiency of Evidence for Perjury and False Swearing

We next examine Appellant's second issue, which challenges the sufficiency of evidence for his perjury and false swearing convictions. Before summarizing Appellant's arguments, we state the following as background. The police had recorded an interview with Widdowson, during which he made a statement regarding his staggering. Appellant cross-examined Widdowson about that recorded statement as follows:

[Appellant's counsel]. And you acknowledged [in the recorded statement] that you were walking up the street, chatting and joking and laughing and bumping each other, right?

[Widdowson]. Potentially there was a little, yes.

Q. You said you were asked if it would have caused you to sway.

A. Um-hmm.

Q. And your response was, no. I mean, it may have caused us to sway one or two feet at the most but 15 feet, no, because you're stumbling 15 feet and you're holding somebody that it's extremely hard to stand up, no, it wasn't even close. We were pretty much on a straight line 90 percent of the way at least. Is that right?

A. Yeah.

Q. So you weren't just walking up the middle of the sidewalk?

A. Well, I mean, who walks on a dead specific line from one point to another? Again, as you have somebody holding your arm, you're going to have occasional accidental bumps of shoulder whether you're drunk or whether you're a hundred percent sober or at any point. There's a case that that's going to happen. Again, you're going to deviate a tiny little bit of the pavement in any of those circumstances.

R.R. at 258a-59a.

Appellant also called Carpenter, his then-partner, as a witness.

Carpenter testified that he observed Widdowson and Jones walk as follows:

On that same sidewalk, on the east side sidewalk, there was a couple that had their backs towards us. They were also walking north. They were like arm in arm and they were -- the path they were taking, they were going back and forth as they walked, first shifting to one side and then shifting back to the other side.

\* \* \*

[Commonwealth]. And when you say that they were going from one side to the other, what do you mean?

- 12 -

A. I mean, they weren't walking in a straight line together. Their path was shifting about 2 feet to one side and then they would come back to center and go 2 feet to the other side and come back to center.

*Id.* at 361a.

Carpenter also read into the record the citation he issued Jones:

[Jones] did appear in public with a strong odor of alcohol on her breath. She was weaving side to side approximately 8 feet as she walked. She was loud, yelling for officers to arrest her.

*Id.* at 371a. With respect to his use of the phrase "eight feet," Carpenter explained that Widdowson and Jones side by side occupied four feet. *Id.* at 372a. Carpenter stated that because the couple purportedly shifted two feet to either side, he meant they weaved a total of eight feet in width. *Id.*

Appellant also testified about his testimony at Widdowson's summary trial. In pertinent part, during cross-examination at Appellant's trial, the following exchange occurred:

[Commonwealth]. Is it your testimony here that [Widdowson and Jones] were staggering 15 feet side to side?

[Appellant]. As I recall, I said they were going the width of the sidewalk and then I guessed the width to be about 15 feet.

*Id.* at 430a.

Appellant raises three arguments challenging the sufficiency of the evidence. First, Appellant maintains that the evidence was insufficient to establish the falsity of his statement that Widdowson and Jones staggered the width of the fifteen-foot wide sidewalk. Appellant's Brief at 15. Appellant

emphasizes that the video surveillance footage only recorded a few seconds of the victims' walk. *Id.* He posits that the fact that the video shows Widdowson and Jones not staggering does not exclude their staggering at some other time. *Id.* Appellant cites Carpenter's testimony, as quoted above, as support that Widdowson and Jones were staggering. *Id.* at 16 (citing R.R. at 361a, 371a). Appellant also refers to Widdowson's own testimony, which we quoted above, that Widdowson and Jones may have swayed one to two feet. *Id.* at 16-17. Finally, Appellant claims that because Jones' "testimony was uncorroborated and much of the evidence presented at trial contradicted her claim that Widdowson did not stagger prior to his arrest," Appellant's perjury conviction must fall. *Id.* at 17.

Second, Appellant contends that the evidence was insufficient to establish that he knowingly made a false statement. *Id.* at 17. Appellant argues that the record establishes his statement reflected an estimate of the distance that Widdowson staggered. *Id.* at 18. Because "estimates are by their very nature susceptible to inaccuracies," Appellant reasons that the Commonwealth could not establish that his statement that Widdowson was staggering "the entire width of the sidewalk," "was 'knowingly' false." *Id.* In support, Appellant cites *Commonwealth v. Hawkins*, 284 A.2d 730 (Pa. 1971), which we discuss below.

Third, Appellant argues that even if his statement was knowingly false, it was not material. *Id.* at 20. Appellant reasons that because the record

established that Widdowson was staggering, Appellant's statement that Widdowson staggered for around fifteen feet was not material. *Id.* at 21. Appellant identifies what he believes was sufficient circumstantial evidence of Widdowson's drunkenness. *Id.*

We state the standard of review for a challenge to the sufficiency of evidence as follows:

> A claim challenging the sufficiency of the evidence presents a question of law. We must determine whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt. We must view evidence in the light most favorable to the Commonwealth as the verdict winner, and accept as true all evidence and all reasonable inferences therefrom upon which, if believed, the fact finder properly could have based its verdict.

*Arcelay*, 190 A.3d at 617 (citation omitted). We note that the trier of fact is free to believe all, part, or none of the evidence. *Commonwealth v. Harper*, 403 A.2d 536, 539 (Pa. 1979).

The Crimes Code defines the offense of perjury as follows:

> **(a) Offense defined.—**A person is guilty of perjury, a felony of the third degree, if in any official proceeding he makes a false statement under oath or equivalent affirmation, or swears or affirms the truth of a statement previously made, when the statement is material and he does not believe it to be true.

> **(b) Materiality.—**Falsification is material, regardless of the admissibility of the statement under rules of evidence, if it could have affected the course or outcome of the proceeding. It is no defense that the declarant mistakenly believed the falsification to be immaterial. Whether a falsification is material in a given factual situation is a question of law.

\*     \*     \*

- 15 -

**(f) Corroboration.—**In any prosecution under this section, except under subsection (e) of this section, falsity of a statement may not be established by the uncorroborated testimony of a single witness.

18 Pa.C.S. § 4902.

With respect to materiality, in **Commonwealth v. Lafferty**, 419 A.2d 519 (Pa. Super. 1980), this Court observed:

Materiality is to be determined as of the time that the false statement was made. Furthermore, the test of the materiality of a false statement is whether it can influence a fact-finder, not whether it does. The fact that the false testimony was unnecessary to accomplish the end in view will not render it immaterial.

**Id.** at 521-22 (citations omitted); **accord Commonwealth v. King**, 939 A.2d 877, 881-82 (Pa. 2007) (stating, "the false statement need not be material to the main issue, so long as it has a legitimate tendency to prove or disprove some fact that is material, irrespective of the main fact at issue" (internal quotation marks and citation omitted)).

Lastly, the Pennsylvania Supreme Court has construed subsection (f) as permitting uncorroborated testimony of a single witness so long as such testimony is corroborated by circumstantial evidence. **Commonwealth v. Johnson**, 626 A.2d 514, 516 (Pa. 1993); **accord In re Miles**, 170 A.3d 530, 538 (Pa. Super. 2017).

The offense of false swearing is defined as follows:

**(a) False swearing in official matters.—**A person who makes a false statement under oath or equivalent affirmation, or swears or affirms the truth of such a statement previously made, when

- 16 -

he does not believe the statement to be true is guilty of a misdemeanor of the second degree if:

(1) the falsification occurs in an official proceeding; or . . .

\* \* \*

**(c) Perjury provisions applicable.**—Section 4902(c) through (f) of this title (relating to perjury) applies to this section.

18 Pa.C.S. § 4903.

With respect to the knowledge element, "it is clear that the state of defendant's belief in the falsity can be proved by circumstantial evidence and by inference drawn from proven facts." **Commonwealth v. Weitkamp**, 386 A.2d 1014, 1029 (Pa. Super. 1978) (internal quotation marks and citations omitted).

In **Hawkins**, a witness testified at the preliminary hearing that the distance between the defendant and the victim was eighteen inches. **Hawkins**, 284 A.2d at 731. But the witness later testified at trial that the decedent was "maybe 6 feet" away from the defendant. **Id.** At a post-conviction relief hearing, the defendant claimed that he was convicted because the witness perjured herself. **Id.** The **Hawkins** Court held that the defendant failed to establish perjury because "the [post conviction relief act] judge could properly find that the [witness's] statement at trial was honestly given and not willfully and corruptly false." **Id.**

Here, we have reviewed the record and construed the facts and all reasonable inferences therefrom in the Commonwealth's favor. **See Arcelay**,

190 A.3d at 617. Appellant's first argument does not acknowledge the testimony of both Widdowson and Jones denying that they were staggering. *See, e.g.*, R.R. at 179a, 215a-16a. Each person's testimony thus corroborated the other's testimony. *See* 18 Pa.C.S. § 4902(f). We add that the jury was well aware that the video surveillance footage, which corroborated the victim's version of events, was limited to several seconds. *See* R.R. at 157a, 206a; *see also Johnson*, 626 A.2d at 516 (holding single witness's testimony may be corroborated by circumstantial evidence). With respect to Carpenter's testimony, which Appellant cites in support and which we quoted above, Carpenter did not testify that Widdowson and Jones were staggering fifteen feet, or the entire width of the sidewalk. *See* R.R. at 361a. In fact, Carpenter testified that they weaved eight feet at most. *See id.* To the extent that the testimony of Carpenter or Appellant, however, actually conflicted with Widdowson's recorded statement or the testimony of Widdowson and Jones, it was well within the jury's purview to disbelieve any such testimony. *See Harper*, 403 A.2d at 539.

Second, it was for the jury to determine whether Appellant knew his statement was false, based on the record and its evaluation of the witnesses' credibility. *See Weitkamp*, 386 A.2d at 1029; *see also Harper*, 403 A.2d at 539. The jury heard Appellant read his sworn testimony at Widdowson's summary trial into the record. *See* R.R. at 112a-15a (asserting that the defendants were staggering the entire width of the sidewalk, which "has got

to be 15 feet wide"). The jury then heard Appellant testify at trial that his summary trial testimony was a "guess." ***See id.*** at 430a. Like the post-conviction relief act judge in ***Hawkins***, it was for the jury to consider the evidence and all reasonable inferences therefrom as to whether Appellant was merely guessing at Widdowson's trial or was knowingly making a false statement under oath. ***See Hawkins***, 284 A.2d at 731; ***Weitkamp***, 386 A.2d at 1029. The jury considered the evidence and found that Appellant's statement was a deliberate falsehood and not an estimate.

Finally, with respect to materiality, Appellant was a police officer testifying as to his basis for arresting and charging Widdowson with public intoxication. Appellant testified that Widdowson staggered the width of the entire sidewalk, a span of approximately fifteen feet. Appellant's statement had a legitimate tendency to prove a fact corroborating Widdowson's alleged intoxication. ***See King***, 939 A.2d at 881-82; ***Lafferty***, 419 A.2d a 521-22. Therefore, the statement could have influenced the judge to convict Widdowson of public intoxication. ***See King***, 939 A.2d at 881-82; ***Lafferty***, 419 A.2d a 521-22. Accordingly, having viewed the record in the light most favorable to the Commonwealth, we conclude Appellant's sufficiency challenge lacks merit. ***See Arcelay***, 190 A.3d at 617.

### Discretionary Challenge to Appellant's Sentence

Initially, Appellant challenges the discretionary aspects of his sentence, an issue that is not appealable as of right. ***See Commonwealth v. Colon***,

- 19 -

102 A.3d 1033, 1042 (Pa. Super. 2014). Instead, this Court has set forth an analytical framework under which we determine whether we may exercise our discretion to hear such an appeal. Under that framework, we determine—

> (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question [regarding the sentence's impropriety under the Sentencing Code]. [I]f the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

*Id.* at 1042-43 (citation omitted). The determination of whether there is a substantial question "is made on a case-by-case basis, and this Court will grant the appeal only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Sierra*, 752 A.2d 910, 912-13 (Pa. Super. 2000) (internal quotation marks and citation omitted). "[A]rguments that the sentencing court failed to consider the factors proffered in 42 Pa.C.S. § 9721 does present a substantial question whereas a statement that the court failed to consider facts of record, though necessarily encompassing the factors of § 9721, has been rejected." *Commonwealth v. Dodge*, 77 A.3d 1263, 1272 n.8 (Pa. Super. 2013).

Here, Appellant has timely appealed, preserved the issue in a post-sentence motion, and included a Pa.R.A.P. 2119(f) statement. *See Colon*, 102 A.3d at 1042-43. Appellant's Rule 2119(f) statement asserted that the

trial court erred by relying "solely on the seriousness of [A]ppellant's crime and its impact [on] the community in imposing an unduly harsh sentence without consideration for his lack of criminal history, rehabilitative potential and exemplary community service." Appellant's Brief at 29.[11] Because Appellant's statement is that the court failed to consider all of the section 9721 factors, he has raised a substantial question. *See Dodge*, 77 A.3d at 1272 n.8; *Sierra*, 752 A.2d at 912-13. We therefore address the substantive merits of Appellant's claim.

Appellant argues that his aggregate sentence was excessive because his convictions called for a sentence of restorative sanctions. Appellant's Brief at 30. He maintains that the court improperly focused only on the seriousness of his crimes "and his abuse of power as a police officer, while ignoring substantial evidence that would have supported the imposition of a mitigated sentence." *Id.* Because the court allegedly failed to address Appellant's potential for rehabilitation, Appellant argues the court could not adequately explain how its sentence complied with the sentencing code. *Id.* at 30-31.

Our standard of review is as follows:

---

[11] Appellant's Rule 2119(f) statement, however, does not state what the guideline sentence ranges were for each of his convictions, and the specific sentences he received for each of those counts. *See Commonwealth v. Goggins*, 748 A.2d 721, 727 (Pa. Super. 2000) (requiring that the Rule 2119(f) statement specify where the sentence falls in relation to the sentencing guidelines).

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Zirkle*, 107 A.3d 127, 132 (Pa. Super. 2014) (citation omitted).

In determining whether a sentence is manifestly excessive, the appellate court must give great weight to the sentencing court's discretion, as he or she is in the best position to measure factors such as the nature of the crime, the defendant's character, and the defendant's display of remorse, defiance, or indifference.

*Colon*, 102 A.3d at 1044 (citation omitted).

Additionally, our review of the discretionary aspects of a sentence is confined by 42 Pa.C.S. §§ 9781(c) and (d):

**(c) Determination on appeal.**—The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:

(1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;

(2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or

(3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.

In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.

**(d) Review of record.**—In reviewing the record the appellate court shall have regard for:

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.
>
> (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.
>
> (3) The findings upon which the sentence was based.
>
> (4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(c)-(d).

> Furthermore,
>
> the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

42 Pa.C.S. § 9721(b). The court shall not impose a sentence of total confinement without "regard to the nature and circumstances of the crime and the history, character, and condition of the defendant." 42 Pa.C.S. § 9725. Finally, when the sentencing court has had the benefit of a pre-sentence investigation report, we presume the court was fully apprised of all mitigating information contained therein. *See Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988); *Commonwealth v. Johnson*, 125 A.3d 822, 827 (Pa. Super. 2015).

Here, the court sentenced Appellant to a sentence within the standard range of the sentencing guidelines.[12] In sentencing Appellant, the court acknowledged reviewing the pre-sentence investigation report, the sentencing guidelines, and Appellant's history, and extensively discussed the nature and circumstances of Appellant's offenses. *See* N.T. Sentencing Hr'g, 5/12/17, at 9-13. Based on the aforementioned law, we cannot conclude that the trial court abused its discretion by allegedly disregarding mitigating factors and imposing a standard-range guideline sentence. *See Devers*, 546 A.2d at 18; *Zirkle*, 107 A.3d at 132; *Colon*, 102 A.3d at 1042.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/20/2018

_____

[12] The parties do not dispute this. *See* Appellant's Brief at 30 n.7; Commonwealth's Brief at 14.